SOUTHWICK, P.J.,
Dissenting.
¶ 16. The majority finds that Salter could be convicted both of robbery and of kidnaping. I find that the crimes were too closely intertwined to be the basis for separate convictions. Therefore, I respectfully dissent.
¶ 17. The controlling precedent, indeed, the only relevant precedent, is Cuevas v. State, 338 So.2d 1236 (Miss.1976). The opinion is not very enlightening. This is the operative language:
If forcible detention or movement is merely incidental to a lesser crime than kidnapping, such confinement or movement is insufficient to be molded into the greater crime of kidnapping. An illustration might well be a strong-armed robbery where the victim is detained and perhaps moved a few feet while being relieved of his wallet. The detention and movement would not support kidnapping albeit with force and unlawful. On the other hand, if the confinement or asportation be not merely incidental to a lesser crime, but a constituent part of the greater crime, the fact of confinement or asportation is sufficient to support kidnapping without regard to distance moved or time of confinement.
Id. at 1238-39. The court concluded that if detaining or moving a victim a few feet was merely incidental to the other crime, then kidnaping cannot be separately charged. The Court referred to “lesser” crimes than kidnapping. The problem would arise regardless of the relative se-verities.
¶ 18. The other situation covered by the Cuevas statement is that when the confinement or asportation is a “constituent part” of the other crime, then kidnapping may also be charged. The meaning of that, particularly in distinction to the first part of the rule being announced, is confusing. Was the court saying that if the kidnaping elements are central to the other crime, then both the other crime and kidnapping may be charged? That appears backwards.
¶ 19. To understand better what the court meant, it is necessary to examine closely something else that Cuevas said: “See People v. Adams, 389 Mich. 222, 205 N.W.2d 415 (1973), for a well-reasoned case persuasive to the above point of view.” An examination of the favored precedent, then, may uncover the mysteries created by the summary of the law in Cuevas.
¶ 20. The first point to make about Adams is that the “merely incidental language” appears in that opinion but the “constituent part” phrase does not. The latter phrase may have been an attempt by the Mississippi Supreme Court to explain situations in which the kidnaping elements are not merely incidental, and the phrasing chosen does not fully do so.
¶ 21. The Adams case concerned a prison riot, in which Adams and others took guards and threatened to kill them. Guards were moved around some within the prison. After a few hours the inmates *418 gave up. Adams was convicted of kidnap-ing. The state court of appeals held that the guard in question, who was seized and moved about 1,500 feet by prisoners armed with knives to a fifth floor prison hospital for purpose of reducing risk of escalation, was not kidnapped.
¶ 22. The Michigan Supreme Court found a fact issue and sent it back for a new trial, but the higher court agreed in large part with the intermediate court. It went through a lengthy discussion of kid-naping. It identified what it called “absurd and unconscionable results” in some of the cases.
It is obvious that virtually any assault, any battery, any rape, or any robbery involves some ‘intentional confinement’ of the person of the victim. To read the kidnapping statute literally is to convert a misdemeanor, for example, assault and battery, into a capital offense. A literal reading of the kidnapping statute would permit a prosecutor to aggravate the charges against any assailant, robber, or rapist by charging the literal violation of the kidnapping statute which must inevitably accompany each of those offenses.
Id. at 420.
¶ 23. The Michigan court discussed the rules adopted in California and New York. One California case found that forcing a robbery victim to drive five city blocks in order to facilitate the robbery was not a kidnaping: “The true test in each case is not mere mileage but whether the movements of the victims ‘substantially increase the risk of harm’ beyond that inherent in the crime of robbery itself.” Id. at 420 (quoting People v. Timmons, 4 Cal.3d 411, 93 Cal.Rptr. 736, 482 P.2d 648, 651 (1971)). The Michigan court then quoted the New York rule:
1.The movement element must not be “merely incidental” to the commission of another underlying lesser crime.
2. The movement of a “more complicated nature” may sustain a kidnapping charge.
3. Statutory kidnapping continues to include “traditional” or “conventional” kidnapping abductions designed to effect extortions or accomplish murder.
Id. at 421 (quoting People v. Miles, 23 N.Y.2d 527, 297 N.Y.S.2d 913, 245 N.E.2d 688, 694 (1969)).
¶ 24. The Michigan court said that “if the movement is merely incidental to the commission of another underlying lesser crime, it will not sustain kidnapping. We feel that this is the critical and significant criterion and regard the other two criteria illustrative and not controlling.” Id. Whether asportation “substantially increases the risk to the victim above those to which a victim of the underlying crime is normally exposed” is not a determinative criterion.
¶ 25. This is probably the ultimate set of considerations that Michigan adopted
1. Since the language of the first part of the kidnapping statute by itself is so general as to be susceptible of defining minor crimes as well as kidnapping, where appropriate, asportation must be interpolated to achieve the Legislature’s intention to define the major crime of kidnapping.
2. The movement element is not sufficient if it is “merely incidental” to the commission of another underlying lesser crime.
3. If the underlying crime involves murder, extortion or taking a hostage, movement incidental thereto is generally sufficient to establish a valid statutory kidnapping.
4. If the movement adds either a greater danger or threat thereof, that is a factor in considering whether the movement adequately constitutes the *419 necessary legal asportation, but there could be asportation without this element of additional danger so long as the movement was incidental to a kidnapping and not a lesser crime.
5. Where appropriate, secret confinement or some other non-movement factor may supply a necessary alternative to asportation to complete statutory kidnapping.
6. Whether or not a particular movement constitutes statutory asportation or whether there is an appropriate alternative element must be determined from all the circumstances under the standards set out above and is a question of fact for the jury.
Adams, 205 N.W.2d at 422-23.
¶ 26. Though our kidnaping statute does not require asportation, neither did the Michigan statute. What the Michigan court was saying is that when kidnaping is an integral part of another crime, then something other than temporary seizure or slight movement is needed before both crimes can be charged. Else, there are problems of “constitutional overbreadth,” which I take to be problems of multiplicity. Therefore, requiring someone not to move in order that another crime may be committed is not kidnaping, even though the kidnaping statute states that a forcible seizure of another person constitutes the crime. Miss.Code Ann. § 97-3-53 (Rev. 2000). That is because the other crime and the kidnaping are too interwoven. Even requiring someone to move if that is “merely incidental” to the other crime also cannot become the separate crime of kid-naping.
¶ 27. My conclusion is that when Cuevas adopted the phrase “merely incidental” to explain when kidnaping may not be separately charged alongside another crime, it was clearly applying Adams. The court strayed in its phrasing when it created the term “constituent part” to describe the situation when both may be charged. In fact, the best way to describe situations when both may be charged is simply to determine if the kidnaping is not merely incidental to the other crime.
¶ 28. In applying the Adams test to our case, it is immediately obvious that “merely incidental” is not the brightest line that could have been drawn. Incidental is a matter of degree. Was the locking up of the victims by Salter incidental or not? The better view to me is that telling people to move around inside the bank, even into the bank vault, did not have significance independent of the bank robbery itself. It did not increase the danger to the employees, and may even have reduced the danger to some extent. The distance moved was all within the bank itself; this was not a hostage situation, but just a securing of the victims for long enough until an escape could be made.
¶ 29. What I also find from Adams is that if the State did not seek to charge for bank robbery, the interwoven nature of that crime and kidnaping would not be a problem. The acts within the bank could be charged as kidnaping if the robbery itself were not pursued as a charge. It is only when deciding whether one crime or two were committed that this special rule for kidnaping applies.
¶ 30. The Adams court would make the determination of the separateness of the crimes an issue for the jury. Though Cuevas referred to Adams as a valid explanation of what it was attempting to accomplish, the procedures for implementing the approach might not have been adopted. Even if some cases would make a jury issue of whether the kidnaping is incidental to the other crime, I conclude here as a matter of law that the movement within the bank was incidental to the robbery and did not create a separate crime.
*420 McMILLIN, C.J., KING, P.J., AND CHANDLER, J., JOIN THIS SEPARATE WRITTEN OPINION.