KITCHENS, Justice,
concurring in part and dissenting in part:
¶ 52. Although appalled by the heinous acts of which Graham was. convicted, I am unable to join the majority’s decision to affirm all three of his convictions. As the majority concedes. Count III of Graham’s indictment incorrectly recited the material facts constituting the offense of sexual battery. This was a glaring error that deprived Graham "of his federal and state constitutional right to notice of the crime charged, and it cannot be disregarded. Because the State failed to prove the facts actually alleged in Count III, on that count Graham was entitled to a directed verdict in his favor. Further, the trial court constructively amended Graham’s indictment in violation of Uniform Rule of Circuit and County Court Practice 7.06 by granting a jury, instruction that conformed to the evidence adduced at trial, rather than to the indictment. Finally, because Graham’s confinement of the .victim, was merely incidental to his crime of forcible rape, the evidence.was insufficient to- support Graham’s kidnapping-conviction, I would reverse and render Graham’s convictions of sexual battery and kidnapping. I would affirm Graham’s conviction of forcible rape.
A. Graham, was entitled to a directed verdict because the State. did not prove the facts alleged in the indictment.
¶ 53. The Sixth Amendment to the United States Constitution guarantees that “the accused shall enjoy the right ... to be- informed of the nature and cause of the .accusation.” U.S. Const. amend. VI. Under the Mississippi - Constitution, “the accused shall have a right ... to demand -the nature and cause of the accusation.” Miss. Const. art 3, § 26.' Uniform Rule of Circuit and County Court Practice 7.06 safeguards these constitutional protections by requiring that an indictment contain a “definite written statement of the essential facts constituting the offense charged.” It must fully notify the defendant of the offense charged. URCCC 7.06. “[A]n indictment must contain (1) the essential elements of the crime charged, (2) sufficient facts to fairly inform the defendant of the charge which he must defend, and (3) sufficient facts to enable him to plead double jeopardy in the event of a future prosecution for the same pífense.” Young v. State, 119 So.3d 309, 313 (Miss.2013). While the trial court has the power to amend an indictment as to matters of form, only the grand jury that returned the indictment may amend the indictment to change the substance of the charge. URCCC 7.09; Spann v. State, 771 So.2d 883, 898 (Miss.2000); Quick v. State, 569 So.2d 1197, 1199 (Miss.1990) (stating that “[i]t has been the law since 1858 that the court has no power to amend an indictment as to the matter of substance without the concurrence of the grand jury by whom it was found, although amendments as to mere informalities may be made by the court”).
¶ 54. The pertinent part of Graham’s sexual battery indictment alleged that Graham “did then and there willfully, unlawfully and feloniously engage in sexual penetration, as defined in MCA Section 97-3-97, with [the victim], a female person, without her consent, by performing fellatio on [the victim], .. In violation of Section *1009 97-3-95 .,.. ” (Emphasis added.) Under Mississippi Code Section 97-3-95(a), one-is guilty of sexual battery if “he or she engages in sexual penetration with ... [a]n-other person without his or her consent.” (Miss.Code Ann. § 97-3-95(a) Rev.2014). Mississippi Code Section 97-3-97(a) defines “sexual penetration” as “cunnilingus, fellatio, buggery or pederasty, any penetration of the genital or anal openings of another person’s body by any part of a .person’s body, and insertion of any object into the genital or anal openings of another person’s body.” Miss.Code. Ann. § 97-3r 97(a). (Rev.2014).
¶ 55. The indictment charged that Graham committed sexual battery by performing fellatio on the victim.. “Fellatio” is defined as “oral stimulation of the penis.” Fellatio, Webster’s Ninth New Collegiate Dictionary 455 (1983). Because the indictment states that the victim on whom Graham performed fellatio was “a female person,” it cannot be said that the indictment charged a crime. Even assuming that the indictment sufficiently charged Graham with sexual battery, the problem with. Graham’s sexual battery conviction is that the material facts alleged in the indictment were not what was proven at.trial. The State’s evidence was that Graham forced the victim to perform fellatio on him. Accordingly, after the State had. rested, Graham moved for a directed verdict on the sexual battery charge, arguing that- the State had failed to prove the allegations in the indictment, ,The State responded that “fellatio” can be, either the act of- receiving fellatio or performing fellatio. The trial court agreed, finding that the indictment sufficiently notified Graham, that,he was charged with forcing the victim to perform fellatio on him.
¶ 56. The trial court’s reasoning was faulty. Even if the term “fellatio,” by itself, might refer either to receiving or performing fellatio, the grand jury, specified in the indictment that Graham performed fellatio on the victim. Thus, the State was required to prove that act to secure a conviction.
¶ 57. An accused has a federal and state constitutional right to notice of the “nature and. cause of. the accusation,” and an indictment must contain sufficient facts to inform the defendant fairly of the charge. U.S. Const. amend. VI; Miss. Const. art 3, § 26; URCCC 7.06. Constitutionally sufficient' notice is not achieved by providing the accused incorrect or approximate facts. A corollary to these principles is that, if the State cannot prove the facts alleged in the indictment beyond- a reasonable doubt, then the accused is entitled to a directed verdict. Griffin v. State, 540 So.2d 17, 20 (Miss.1989). Here, the State was unable to prove the facts charged in, the, indictment. Unless the court permissibly could have . allowed amendment of the indictment to conform to the proof, Graham was. entitled to a directed verdict. See id. As it stood, the indictment utterly deprived Graham of his state and federal, constitutional rights to notice of the nature and cause of the accusation. .
B. Jury instruction S-S constructively ... amended Count III of the indictment.
¶ 58. As stated, Graham’s indictment charged him with performing fellatio on the victim. Over Graham’s objection, the trial court- instructed the jury that it could find Graham guilty of sexual battery if it found beyond a reasonable doubt that Graham “did willfully, unlawfully and knowingly engage in sexual penetration, to wit: fellatio, with- [the victim], a female person, without her- consent, by putting his penis in her mouth.” Graham argues that, with this jury instruction, the trial court con *1010 structively and impermissibly amended the indictment.
¶ 59. “A constructive amendment of the indictment' occurs when the proof and instructions broaden thé' grounds upon which-the defendant may be found guilty of the offense charged so that the defendant may be convicted without proof of the elements alleged by the grand jury in its indictment.” Bell v. State, 725 So.2d 836, 855 (Miss.1998). “Amendments to -an indictment are permissible if they do .not prejudice the defendant by (1) materially altering the essential facts of the offense or (2) materially altering a defense under the original indictment.” Lee v. State, 944 So.2d 35, 40 (Miss.2006) (emphasis added). Defects of substance may be corrected only by the grand jury that returned the indictment, and cannot be corrected by the trial court. Spann, 771 So.2d at 898.
¶ 60. It is beyond questión that the jury instruction materially altered the essential facts of sexual battery as charged in the indictment.' The indictment charged Graham with performing fellatio on the victim, but the trial court instructed the jury to find guilt if it determined that Graham had forced the victim to perform fellatio On him. The majority finds that, because Graham’s defense of consent was not altered after the amendment, the amendment was not substantive. However, the test is not whether the defense employed by the accused is available after the amendment, but whether the amendment materially altered any defense that was available- under the original indictment. Lee, 944 So.2d at 40. A defendant always has available the defense that he or she did not perform, the acts alleged in- the indictment. Here, the defense that Graham did not perform fellatio on the victim was no longer available to him after the amendment. Because the amendment materially - altered the facts alleged in the indictment, the amendment was a matter of substance, and it could have been accomplished only by the grand jury that returned the indictment. Spann, 771 So.2d at 898.
¶ 61. It is not the proper role of this State’s trial courts or of this Court to correct substantive' errors in indictments to conform to the proof adduced at trial. In Stirone v. United States, 361 U.S. 212, 213, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), the defendant was indicted for interfering with interstate commerce in violation of the Hobbs Act by causing sand to be moved into the State of Pennsylvania. The Court found that the trial court had amended the indictment by granting a jury .instruction allowing the jury to find that Stirone had violated the Hobbs Act by interfering with steel shipments from Pennsylvania into other states. Id. at 217, 80 S.Ct. 270. The Court found that the amendment was beyond the power of the trial court to make and-could have been made only by the grand jury. Id. The Court stated that “The grand jury which found this indictment was satisfied to charge that Stirone’s conduct interfered with interstate importation of sand. But neither this mor any other court can know that the grand jury would have been willing to charge that Stirone’s conduct would interfere with interstate exportation óf steel....” Id.
¶ 62. The facts of Stirone are analogous to the facts before the Court today. Here, the grand jury charged certain facts underlying Graham’s sexual battery charge, but the trial court grantéd to the State, over defense objection, a jury instruction stating different facts. The jury instruction constructively amended the indictment m violation of Graham’s "constitutional rights to notice of the nature and cause of the accusation against him. We cannot know whether the grand, jury would have been willing to charge Graham .with the *1011 conduct set out in the jury instruction. As the Court stated in Stirone,
“If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their.attention had been- called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner’s trial for a crime, and without which the constitution says ‘no person shall be held to answer,’ may be frittered away until its value is, almost destroyed.”
[[Image here]]
“Any other doctrine would place the rights of the citizen, which were intended to be protected by the constitutional provision, at the mercy or control of the court or prosecuting attorney_”
Id. at 216-17, 80 S.Ct. 270 (quoting Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887), overruled in part on other grounds by United States v. Cotton, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002)). Because the trial court constructively amended Graham’s indictment, I would reverse and render his sexual battery conviction.

C. The evidence was insufficient to support Graham’s kidnapping conviction.

¶ 63. Graham argues- that the evidence was insufficient to support his conviction of kidnapping. He challenged the sufficiency of the evidence with his motion for a directed verdict and his request for a peremptory instruction, which were denied. “The standard of review for a trial court’s denial of a motion for directed verdict, peremptory instruction or judgment notwithstanding the verdict (JNOV) is identical.” Brown v. State, 176 So.3d 1, 11 (Miss.2015). These motions challenge the sufficiency of the evidence, and this Court “reviews the ruling on-the last occasion the challenge was made in the trial court.” Id. “[T]he relevant question is whether, after viewing the evidence in the light -most favorable to the prosecution, any rational trier of fact could have found the essential elements.of the crime beyond a reasonable doubt.” Bush v. State, 895 So.2d 836, 843 (Miss.2005) (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). If the facts and inferences, so considered, “point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty,” then, we must reverse and render. Bush, 895 So.2d at 843 (quoting Edwards v. State, 469 So.2d 68, 70 (Miss.1985)).
¶ 64. The crime of kidnapping is proscribed by Mississippi Code Section 97-3-53, which provides that:
Any person who, without lawful authority and with or without intent to secretly confine, shall 'forcibly seize and confine any other person, or shall inveigle or kidnap any other person with intent to cause such person to be confined or imprisoned against his or her will, ... upon conviction, shall be imprisoned for life in the custody of the Department of Corrections if the punishment is so fixed by the-jury in its verdict. If the jury fails to agree on fixing the penalty at imprisonment for life, the court shall fix the penalty at not less than one (1) year nor-more than thirty (30) years in the custody of the Department of Corrections.
Miss.Code Ann. § 97-3-53 (Rev.2014). Graham challenges the sufficiency of the evidence that he forcibly seized and confined the victim or inveigled or kidnapped her with intent to cause her to be- confined *1012 or imprisoned against her will. He argues that, if “the kidnapping statute [were] to be interpreted as broadly as it is in this case, every single rape' or assault allegation could be accompanied by a kidnapping charge.”
¶ 65. Graham essentially argues that the evidence was insufficient because it showed that his confinement of the victim was merely incidental to his sexual assault of the victim, In Cuevas v. State, 338 So.2d 1236, 1238 (Miss.1976), this Court articulated the following rule applicable to Graham’s argument:
If forcible detention or movement is merely incidental to a lesser crime than kidnapping, such confinement or movement is insufficient to be molded into the greater crime of kidnapping. An illustration might well be a strong-armed robbery where the victim is detained and perhaps moved a few feet while being relieved of his wallet. The detention and movement would not support kidnapping = albeit with force and unlawful. On the other handj if the confinement or asportation be not merely incidental to a lesser crime, but a constituent part of the greater- crime, the fact of. confinement or asportation is sufficient -to support kidnapping without regard to distance moved -or time, of confinement.
Id. (emphasis added). Like Mississippi, a majority of states have recognized that the crime of kidnapping “does nob include conduct involving a restraint that is merely incidental to the commission of some other crime against the victim." State v. Salamon, 287 Conn. 509, 949 A.2d 1092, 1119 (2008), overruled in part on other grounds by State v. Sanseverino, 291 Conn. 574, 969 A.2d 710 (2009). The reason for the rule is that “a literal reading of the kidnapping statutes can lead to. overzealous enforcement; with the result that ‘persons who have committed such substantive crimes as robbery or assault — which inherently involve the temporary detention or seizure of the victim — will, suffer the far greater penalties prescribed by the kidnapping statutes.’ ” State v. Goodhue, 175 Vt. 457, 833 A.2d 861, 864-65 (2003).
¶ 66. In Cuevas, a prisoner escaped from a county jail and fled to an automobile agency, where he took an employee hostage and directed him at gunpoint to the agency’s parts department. Id. at 1237. Cuevas held the employee at gunpoint in the parts department for almost two hours. Id. On appeal, Cuevas challenged the sufficiency of the evidence of kidnapping. Id. The Court held that the employee’s detention was not merely incidental to some lesser crime, and that “the confinement and movement of [the employee] by force from the service entrance of the building to the parts department of the building was sufficiently proved to support Cuevas’ conviction.” Id. at 1238-39.
¶ 67. In Salter v. State, 876 So.2d 412, 414 (Miss.Ct.App.2003), Salter broke into a bank, waited for the employees to arrive, and then forced , three employees at gunpoint into a vault, where he made them lie on the floor. He stole $37,000 from the bank and escaped by stealing an employee’s car. Id. Salter was convicted of burglary, two counts of armed robbery, and four counts of kidnapping. Id. Citing Cuevas, Salter argued that the kidnappings were merely, incidental to the crime of armed robbery. Id. at 415. The Court of Appeals examined “whether Salter’s actions were incidental to a lesser crime or were a constituent part. of the greater crime.” Id. The Court of Appeals held that Salter had fulfilled the elements of kidnapping by forcing, the employees into the bank vault at gunpoint and shutting the door on them as he left. Id. In holding that Salter’s actions were not merely inci *1013 dental to the crime of armed robbery, the Court of Appeals noted that “Salter did not merely move the employees a few feet as he took the money.” Id.
¶ 68. In State v. Goodhue, the defendant, a stranger, entered the victim’s home and ordered her into the bathroom. Goodhue, 833 A.2d at 862. Goodhue threw the victim onto the floor, got on top of her, and then unbuttoned and unzipped her pants and tried to remove them. Id. A door slammed and startled Goodhue, causing him to flee the scene. Id. Goodhue was charged with kidnapping, attempted sexual assault, and burglary. Id. at 863. The trial court denied Goodhue’s motion for a judgment of acquittal on the charges of attempted sexual assault and kidnapping. Id. On appeal, the Supreme Court of Vermont held that the evidence of attempted sexual assault was sufficient to support Goodhue’s conviction. Id. But on the conviction of kidnapping, the Supreme Court held that:
the movement of Carolyn from the kitchen to the bathroom floor did not exceed the confinement or removal inherent in the commission of the crimie of sexual assault nor did it increase the danger to the victim over and above the danger presented by the attempted sexual assault. Defendant’s actions cannot, therefore, provide the basis for a kidnapping conviction.
Id. at 868-69. The Vermont Supreme Court thus recognized that the confinement of the victim was merely incidental to the attempted sexual assault, and that “an offense such as rape necessarily contemplates restrictions on the victim’s liberty while the crime is being committed.” Id. at 868.
¶ 69. In a case with facts similar to those sub judicé, the Second District Court of Appeal of Florida reversed a kidnapping conviction because the movement and confinement of the victim was incidental to. sexual battery. Wilson v. State, 159 So.3d 316, 317 (Fla.Dist.Ct.App.2015). The evidence showed that Wilson attacked the victim as she crossed a dimly lit vacant-lot on her way home from a bar. Id. The vacant lot was covered with grass, underbrush, and several large trees. In the attack, Wilson grabbed the victim and they struggled. Id. Then, he struck her above the eye, knocked her down, and sexually assaulted her. Id. The victim testified that Wilson had held her against her will. Id.
¶ 70. The appellate court reviewed three factors to determine that Wilson’s conduct did not constitute kidnapping. Id. at 318. First, the court found that “the evidence established that the movement was merely incidental to the crime of sexual battery because it occurred during a struggle to restrain the victim by getting her to the ground.” Id. Second, the court found that, because Wilsón could hot have committed the crime' without restraining the victim,"the confinement was inherent in the crime of sexual battery.' Id. And third, the court found that “the movement did' not have independent significance because it did not make the crime easier or substantially lessen the risk of detection.” Id.
¶ 71. In this case, the majority finds that the evidence was sufficient to support Graham’s kidnapping conviction. The majority rests this finding on the victim’s testimony that, as Graham, his codefen-dant, Inge, and the victim walked along the path toward the convenience store, Inge punched the victim, and then the men blocked her exit from the wooded area as they sexually assaulted her. The majority also cites the victim’s testimony that she askéd Graham and Inge to' take her somewhere else, that they refused, that Inge told her they would not take her elsewhere *1014 because they thought she would run, and that the victim fled at the earliest opportunity. I would find that, considering the evidence in the light most favorable to the verdict, the evidence shows that Graham’s confinement of the victim was merely incidental to his crime of forcible rape.
¶ 72. One commits forcible rape[4] by “hav[ing] forcible sexual intercourse with any person.” Miss.Code Ann. § 97-3-65(4)(a) (Rev.2014). Although physically restraining the victim is not a necessary element of forcible rape, Madere v. State, 794 So.2d 200, 210-11 (Miss.2001), the crime often involves physically restraining the victim in one location for its accomplishment. See, e.g., Expose v. State, 99 So.3d 1141, 1143 (Miss.2012) (the rapist dragged the victim down an embankment and restrained her as she pled for him to stop). . Here Graham did not move the victim, but held her in one place for the purpose of accomplishing the forcible rape. Thus, unlike in Cuevas and Salter, Graham restricted the victim’s movement only to the extent necessary to accomplish another crime. And as in Goodhue and Wilson, Graham’s confinement of the victim as he sexually assaulted her was part and parcel of his forcible rape of the victim. Considering the evidence and all reasonable inferences in the light most favorable to the State, Graham did no more than was necessary to accomplish the crime of forcible rape and his confinement of the victim was merely incidental to the forcible rape.
¶ 73. The majority’s holding that the evidence was sufficient to support a kidnapping conviction threatens to warrant a kidnapping conviction every time a defendant is convicted of a forcible rape that has a-factual component of physical restraint. This cannot have been the legislative intent behind codifying these separate crimes. I would hold that, considering the evidence in the light most favorable to the verdict, the evidence was insufficient to support Graham’s kidnapping conviction because his acts of confining the victim were merely incidental to his crime of forcible rape. I would affirm his conviction of forcible rape.

D. Conclusion

¶ 74. I would reverse and render Graham's convictions of sexual battery and kidnapping, Due to the fatal variance between the. proof at trial and the facts alleged in the indictment, Graham was entitled to a directed verdict on the sexual battery charge. The jury instruction on sexual battery was a constructive amendment to the indictment that violated Graham’s federal and state constitutional rights to notice of the nature and cause of the charge against him. And because Graham’s. restraint of the victim was merely incidental to his crime of forcible rape, the evidence was insufficient to support Graham’s conviction of kidnapping. For these reasons, I respectfully concur,in part and dissent in part.

. Cuevas states that confinement or movement of a victim that is merely incidental to a "lesser crime than kidnapping” is insufficient to support a kidnapping conviction. Cuevas, 338 So.2d at 1238. Because both forcible rape and kidnapping carry a maximum sentence of life imprisonment, forcible rape is not a "lesser crime than kidnapping.” Miss. Code Ann. §§ 97-3~65(4)(a), 97-3-53 (Rev. 2014). But whether kidnapping is a lesser crime makes no difference to the analysis of whether conduct is merely incidental to another crime and insufficient to support a kidnapping conviction.